IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
BEAUFORT DIVISION

| | | |
|---|---|---|
| Amy Sauter Hill, power-of-attorney for Nancy Jean Sauter, | ) ) ) | |
| Plaintiff, | ) ) | Civil Action No.: 9:23-cv-712-RMG |
| vs. | ) ) | |
| James Wesley Sauter, | ) ) | |
| Defendant. | ) ) | **COMPLAINT** |
| | ) ) | (Jury Trial Requested) |
| | ) ) | |

Plaintiff Amy Sauter Hill ("Amy"), on behalf of her sister, Nancy Jean Sauter ("Nancy") and through undersigned counsel, files this complaint against Defendant James Wesley Sauter ("Jim"), and alleges as follows:

**PARTIES AND JURISDICTION**

1.     Amy is a citizen and resident of the State of Maine.

2.     Amy is the attorney-in-fact for Nancy, the sister of Amy, pursuant to a power of attorney executed under New York law on November 15, 2022. A copy of the power of attorney is attached as **Exhibit A**.

3.     Nancy is a citizen and resident of the State of New York.

4.     Jim is the brother of Amy and Nancy. Jim is a citizen and resident of Bluffton, Beaufort County, South Carolina.

5.     Wesley Perry Sauter ("Dr. Sauter") was the father of Jim, Amy, Nancy and also the father of David Sauter ("David") and Melinda Sauter ("Mindy").

1

6.      Dr. Sauter died December 9, 2016. At the time of his death, Dr. Sauter was a citizen and resident of Bluffton, Beaufort County, South Carolina.

7.      Dr. Sauter left a last Will and Testament dated September 25, 2012.

8.      On May 2, 2017, Nancy and Jim applied for an informal probate of the Will and Testament and appointment of themselves as co-personal representatives.

9.      On June 2, 2017, the Beaufort County Probate Court admitted the Will and Testament to informal probate and granted Nancy and Jim's application for informal appointment as personal representatives.

10.     Dr. Sauter's Estate was ultimately closed on August 30, 2019.

## GENERAL ALLEGATIONS

11.     Amy repeats and realleges the preceding allegations as if fully set forth herein.

12.     Nancy is disabled (hearing impaired) and has Turner Syndrome.

13.     Turner Syndrome is a random, chromosomal anomaly associated with females having short stature, failure of the ovaries to develop, hearing and vision loss, heart defects and numerous learning disabilities including difficulties with nonverbal problem-solving, math comprehension, and executive functions such as managing and planning.

14.     During his lifetime, Dr. Sauter stated that because of certain challenges that Nancy suffers, upon his death his remaining assets would be for the care and benefit of Nancy. Nancy, through a testamentary trust, was the primary beneficiary of Dr. Sauter's last Will and Testament.

15.     Amy, David and Mindy all acknowledge that their father intended for his assets to be held and distributed solely for Nancy's care and benefit during her lifetime.

16.     Dr. Sauter informed Nancy personally that he would be entrusting assets to Jim to safeguard for her care and benefit upon his death.

17.     Upon information and belief, and during his lifetime, Dr. Sauter established and funded at least one joint account with Jim, and Jim was beneficiary on at least one other account. These accounts totaled approximately $1,000,000.00. Dr. Sauter arranged for these assets to pass to Jim upon the express condition that the funds would be used solely for Nancy's care and benefit.

18.     Shortly after Dr. Sauter died, Jim would send Nancy funds for her care and benefit. This was consistent with Dr. Sauter's wish for his assets to be used for Nancy's care and benefit.

19.     Amy, David, and Mindy assumed that Nancy's medical expenses and other care would eventually require additional funds and that their brother Jim would provide such funds to Nancy as needed.

20.     On September 22, 2022, Nancy fell backwards on a sidewalk fracturing her cranium and causing a subarachnoid hematoma. Nancy spent 6 days in a neurosurgery unit and has been convalescing at home since her hospital discharge. Amy has coordinated nursing care, medical appointments, and all other needs that have arisen to care for Nancy. This has included paying for medical equipment, food, and Nancy's home health nurse.

21.     Amy communicated with Jim after Nancy was injured to discuss the anticipated increase in medical needs and their costs. Jim acknowledged that he had funds from their father that were for the care and benefit of Nancy. Notwithstanding this acknowledgement, Jim refused to send any funds mentioned above to pay for Nancy's increased needs after her injury.

22.    In October 2017, Nancy transferred a T. Rowe Price mutual fund account in the amount of $23,372.81 to Jim for safe keeping. Jim has failed to acknowledge or return such funds to Nancy.

23.    Jim Sauter fraudulently concealed from Nancy and the rest of his siblings that he was breaching his duties to Nancy in the manner set forth herein.

### FOR A FIRST CAUSE OF ACTION
(Conversion)

24.    Amy repeats and realleges the preceding allegations as if fully set forth herein.

25.    Other than certain nominal amounts of funds, Nancy has received none of the funds transferred to Jim by Dr. Sauter on her behalf or the mutual fund she transferred to Jim for safe keeping. All assets entrusted to Jim for the care and benefit of Nancy have been wrongfully converted by Jim for his own purposes and Jim has denied Amy use of those assets.

26.    Jim's wrongful conversion has caused Nancy to retain the services of an attorney to protect her interests, all to her damage, both actual and consequential, in an amount to be determined by a jury at trial.

### FOR A SECOND CAUSE OF ACTION
(Promissory Estoppel)

27.    Amy repeats and realleges the preceding allegations as if fully set forth herein.

28.    Jim promised his sister Nancy that he would safeguard her money for her benefit.

29.    Jim knew and/or reasonably expected that his promise to safeguard Nancy's money would induce her to transfer to him $23,372.81 of mutual funds.

30.    Based on Jim's promise, Nancy transferred $23,372.81 of her mutual funds to Jim.

31. Upon information and belief, in violation of the promise Jim made to Nancy, Jim made personal use of the funds.

32. Jim's misuse of the funds and failure to repay the funds can only be cured by the enforcement of the aforementioned promises made by Jim.

33. Nancy is further entitled to recover damages, including, by way of example but without limitation, for the value of the mutual fund, the profits Nancy would otherwise have obtained from the fund and could have obtained in the future, in amounts to be determined by a jury at trial.

## FOR A THIRD CAUSE OF ACTION
(Breach of Fiduciary Duty)

34. Amy repeats and realleges the preceding allegations as if fully set forth herein.

35. Jim owed a fiduciary duty to Nancy because she reposed trust and confidence in Jim to safeguard funds to be used for her care and benefit. Nancy is disabled and is unable to safeguard her own assets, of which her brother is aware. Nancy has relied upon Jim to safeguard her finances. Dr. Sauter entrusted Jim with approximately $1,000,000.00 for Nancy's care and benefit. In addition, in 2017, Nancy transferred mutual funds, which at the time, were worth $23,372.81 to Jim to safeguard for her. These transfers were made in reliance on Jim's integrity of fidelity.

36. As a fiduciary, Jim owes a duty to Nancy to disclose fully to Nancy (and to Amy on behalf of Nancy) all known material and significant facts regarding his service as her fiduciary. Jim has breached this duty by failing and refusing to disclose that Dr. Sauter entrusted Jim with assets to use for Nancy's support, the amount of money he received from Dr. Sauter, the amount of money that he currently holds on behalf of Nancy, the manner in which he is holding the money, any facts which would inform Nancy as to any claims she may have against

Jim or other persons for a recovery of damages, and any other information that would be significant and material to Nancy or her attorney in fact. Jim's breaches of his duty to disclose, constitutes fraud and fraudulent concealment.

37.    Jim also owed fiduciary duties to Dr. Sauter because he reposed trust and confidence in Jim. Jim shared ownership of a joint account and was the beneficiary of another account, both of which Dr. Sauter established and funded. Dr. Sauter instructed Jim that, upon Dr. Sauter's death, Jim was to hold these two accounts solely for the care and benefit for Nancy during her lifetime. Jim admits to receiving "special instructions" from Dr. Sauter, regarding Nancy's care and attention.

38.    Jim refuses to provide Amy, who holds power-of-attorney for her sister and safeguards her care, with the assets he was entrusted to safeguard for Nancy, despite promising to do so.

39.    Upon information and belief, Jim converted mutual funds belonging to Nancy and valued at $23,372.81 at time of transfer to his own use.

40.    Jim has retained approximately $1,000,000.00 he was entrusted with by Dr. Sauter for Nancy's care and benefit for his own benefit.

41.    As a direct and proximate result of Jim's breaches of fiduciary duty, Amy seeks compensatory damages of approximately $1,023,372.81, as the amount of money that was entrusted to Jim to hold for Nancy's benefit; and punitive damages in an amount to be determined by the jury at trial.

## FOR A FOURTH CAUSE OF ACTION
(Fraudulent concealment)

42.    Amy repeats and realleges the preceding allegations as if fully set forth herein.

43.     As set forth herein, a fiduciary relationship also arose when Nancy reposed trust and confidence in her brother, Jim, to safeguard the $23,372.81 mutual fund that she transferred to him to safeguard for her care and benefit. Nancy trusted that Jim would safeguard the fund for her care and benefit, as he promised.

44.     Because of his fiduciary relationship with Nancy, Jim had a duty to disclose when he used Nancy's funds for other purposes and/or depleted Nancy's mutual fund that he was entrusted to safeguard.

45.     The omitted and concealed facts concerning Nancy's funds were material because they created a false security that Nancy's funds were properly secured and would be available when she needed them, as promised by Jim.

46.     Jim actively concealed and suppressed these material facts to retain Nancy's funds for his own financial enrichment, to Nancy's detriment.

47.     Nancy was unaware of these omitted material facts and would not have agreed to transfer the mutual funds to Jim, or otherwise act as she did if she had known of the concealed and/or suppressed facts.

48.     As a direct and proximate result of Jim's nondisclosure, Nancy was unaware of any claim she or her power of attorney, Amy, may have against Jim and she lost a substantial amount of her money.

49.     Amy seeks compensatory damages and punitive damages in an amount to be determined by a jury at trial.

## FOR A FIFTH CAUSE OF ACTION
(Intentional Interference with Inheritance)

50.     Amy repeats and realleges the preceding allegations as if fully set forth herein.

51.     During his lifetime, Dr. Sauter desired and intended to leave the bulk of his assets to his daughter, Nancy, to ensure she would be taken care of financially.

52.     Because of Dr. Sauter's expressed wishes, Nancy reasonably expected that she would inherit the vast majority of her father's assets upon his death which was consistent with the probated version of his Will and Testament and statements Dr. Sauter made to his children.

53.     Jim knew of Nancy's expectancy interest in Dr. Sauter's Estate and assets, which was based on Dr. Sauter's long-standing plan, expressed prior to his death, and Jim intentionally interfered with such expectancy.

54.     A confidential relationship existed between Dr. Sauter and Jim.

55.     Upon information and belief, Jim intentionally and deliberately took steps to interfere with Nancy's inheritance and expectations of inheritance by engaging in the tortious and intentional course of conduct alleged herein, including, but not limited to, the fraudulent concealment of material facts, in violation of his fiduciary duties and applicable law.

56.     As a direct and proximate result of the intentional acts of Jim, Nancy was deprived of funds Dr. Sauter intended her to inherit and that she reasonably expected to receive.

57.     Upon information and belief, Jim has retained, at minimum, approximately $1,000,000.00 of Dr. Sauter's assets that were for Nancy.

58.     Jim engaged in the tortious and intentional course of conduct alleged herein for the improper purpose of interfering with Dr. Sauter's long-standing testamentary intent, to enrich himself at the expense of Nancy and Amy, who is responsible for managing Nancy's affairs.

59.     As a direct and proximate result of Jim's tortious and intentional acts, Amy has suffered economic damages, including, but not limited to, the expenditure of attorneys' fees and costs to protect Nancy's interests.

60.    Jim is liable for all damages proximately caused by his tortious and intentional acts of interference with Nancy's inheritance in an amount to be determined by a jury at trial.

### FOR A SIXTH CAUSE OF ACTION
(Unjust Enrichment)

61.    Amy repeats and realleges the preceding allegations as if fully set forth herein.

62.    Nancy transferred a mutual fund worth $23,372.81 to Jim for him to safeguard for her benefit.

63.    Dr. Sauter gave Jim approximately $1,000,000.00, which was to be used for Nancy's care and benefit.

64.    Upon information and belief, Jim converted the $23,372.81 mutual fund for his personal use, without paying Nancy for its value. Jim is also withholding approximately $1,000,000.00 of funds which were given to him by Dr. Sauter for the care and benefit of Nancy and will not transfer these funds to an account in Nancy's name, transfer such amount to Amy for Nancy's care and benefit, or otherwise repay Nancy for the money he retained.

65.    As a direct and proximate result of Jim's withholding of funds rightfully belonging to Nancy for his personal use, Jim has been unjustly enriched in an amount to be determined by a jury trial.

### FOR A SEVENTH  CAUSE OF ACTION
(Constructive Trust)

66.    Amy repeats and realleges the preceding allegations as if fully set forth herein.

67.    The circumstances described herein show that Jim obtained money which does not equitably belong to him, and which was acquired by his breach of the trust and confidence placed in him by Dr. Sauter and by Nancy.

68.    Accordingly, a constructive trust should be imposed by this Court upon the assets of Dr. Sauter and of Nancy which Jim wrongfully retained for his own use.

## **PRAYER**

**WHEREFORE,** having set out the foregoing Complaint against Jim, Amy hereby prays for the following relief:

(a) Judgment against Jim on all of Amy's causes of action in an amount to be determined by the trier of fact;

(b) Judgment against Jim for actual damages, consequential damages, special damages, the costs of this action, attorneys' fees, and litigation expenses;

(c) Imposition of a constructive trust by this Court on assets wrongfully taken by Jim;

(d) Pre- and post- judgment interest on all damages awarded; and

(e) Such other and further legal and equitable relief as this Court may deem just and proper.

NELSON MULLINS RILEY & SCARBOROUGH LLP

By: s/ ROBERT H. BRUNSON
    Robert H. Brunson (S.C. Bar No. 11987)
    E-Mail: robert.brunson@nelsonmullins.com
    Olesya V. Bracey (S.C. Bar No. 101409)
    E-Mail: olesya.bracey@nelsonmullins.com
    151 Meeting Street / Sixth Floor
    Post Office Box 1806 (29402-1806)
    Charleston, SC 29401-2239
    (843) 853-5200

    *Attorneys for Plaintiff.*

Charleston, South Carolina
February 22, 2023